UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR-04-78-B-W |
| | ) | |
| JOHN EDWARD WALSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE**

It is understandable Defendant John Edward Walston would prefer to have the circumstances surrounding his alleged possessions of firearms and ammunition excluded from evidence. However, what may be advantageous strategically would be erroneous legally. Because the Government has the right to provide the context for its allegations of illegal possession, and because the context provides probative evidence of Mr. Walston's intent, motive, knowledge, and lack of mistake, this Court DENIES the Defendant's motion in limine to limit the evidence strictly to his actual possession on Counts II, III, and IV. To allow the parties to determine whether there are alternative means to obviate the need for evidence of the outstanding arrest warrant, the Court DEFERS RULING on whether this evidence is admissible in Count IV. This Court GRANTS the Defendant's motion to limit evidence of his prior conviction in accordance with *Old Chief v. United States,* 519 U.S. 172 (1997).

**I.    THE CHARGES**

Mr. Walston is charged in a four-count Second Superseding Indictment (Docket # 42). Count One alleges that, on May 18, 2001, Mr. Walston made a false statement on a federal application for a firearm in violation of 18 U.S.C. § 922(a)(6). Counts Two, Three, and Four allege illegal possessions of firearms or ammunition. They are premised on the allegation that

Mr. Walston was convicted in 1996 of a misdemeanor crime of domestic violence. Count Two alleges that, on December 15, 2002 and March 4, 2003, Mr. Walston possessed a .22 caliber clip containing six bullets in violation of 18 U.S.C. § 922(g)(9); Count Three alleges that from the end of October 2001 to December 15, 2002, Mr. Walston possessed a .22 caliber Bryco Jennings semi-automatic pistol in violation of § 922(g)(9); and, Count Four alleges that, on or about September 24, 2004, Mr. Walston possessed a .22 caliber Rohm revolver in violation of § 922(g)(9).

## II.   THE ARGUMENTS

### A.  The Defendant's Position

Mr. Walston's Motion in Limine seeks to exclude from evidence any information "not directly relevant to the sole issue of [his] actual possession of a firearm or ammunition." Def.'s Mot. in Limine (Docket # 33) at 1. Specifically, he asks that any evidence relating to "the basis for the presence of police at [his] residence, or the vehicle referenced in Count Four, or the fact of and basis for any warrants outstanding for [him]." *Id.* at 1-2. He moves to limit the evidence to the fact an investigation was taking place, and, during the investigation, the police "located certain items while searching the premises or vehicle." *Id.* at 2. Mr. Walston argues the admission of "the underlying facts of [his] prior record or factual basis leading to the investigation of the allegations of firearm possession [would] improperly serve to create the impression that [he] is dangerous and therefore, the jury would be more likely to conclude that there would be a likelihood of [him] possessing a firearm or ammunition." *Id.* He says such evidence would be "unfairly prejudicial." *Id.* Mr. Walston also asks this Court to exclude any reference to the facts underlying his prior conviction for misdemeanor domestic violence and to limit the evidence to the mere fact of the prior conviction. *Id.* at 1.

**B. The Government's Response**

The Government responded by arguing that the facts surrounding Mr. Walston's alleged possession of firearms and ammunition go not to his propensities, but rather to his possession of these items and to his motive, intent, knowledge, and lack of mistake. To make its points, the Government has proffered the evidence it will seek to admit on the possession counts.

> **1. Count II: December 15, 2002 and March 4, 2003 Possession of a .22 Caliber Clip Containing Six Bullets and Count III: October 2001 to December 15, 2002 Possession of a Bryco Jennings J-22 .22 Caliber Semi-Automatic Pistol**

Mr. Walston was the manager of an apartment house containing three units on 183 Church Street in Dexter, Maine. Mr. Walston and his then-fiancé (now wife) Jacyln Goss and their infant, Breena, lived on the first floor. Belinda Gosselin and Josh Chambers and Joshua Nickerson and Carie Ludden and their young son lived upstairs in separate apartments. The upstairs tenants were friendly with each other and often kept their doors open. On December 13-14, 2002, Jacyln Goss's sister, Jennifer Goss, and Jennifer's boyfriend, Daniel Quinn, were visiting Jacyln Goss and Mr. Walston. On December 13, 2002, Jennifer Goss saw Mr. Walston hide a handgun behind a brick in the fireplace in his apartment.

Throughout the early evening of December 14, 2002, the upstairs tenants and their guests heard sounds of fighting from Mr. Walston's apartment. At approximately 9:30 p.m., Mr. Walston assaulted both Jacyln Goss, who was pregnant at the time, and Daniel Quinn. Jennifer Goss got the baby Breena and went to Quinn's car. Daniel Quinn proceeded upstairs to the Nickerson-Ludden apartment and began to call the police. Mr. Walston went upstairs and essentially chased Daniel Quinn out of the apartment house. While upstairs, Mr. Walston yelled that he would shoot Jacyln if he went to jail. The police arrived and arrested Mr. Walston. He resisted arrest, but was ultimately subdued and taken to jail. At jail, Mr. Walston told Officer

Kevin Wintle he knew a lot about the Hardesty case, which had involved a stand-off with the police in which the police had ultimately shot Hardesty, and he said the police had acted wrongly.

After the police had left the apartment house, Jacyln Goss came upstairs and said she had hidden Mr. Walston's gun and she had to go bail him out. Jacyln asked Carie Ludden for a ride to the jail, but Ludden refused. Ludden did offer to watch Breena while Jacyln went to bail out Mr. Walston. Mr. Walston was released on bail with the condition he not return to 183 Church Street.

After release, Mr. Walston went back to 183 Church Street with his friend Roger Plourde. Messrs. Walston and Plourde climbed the fire escape at the back of the house. They gained entry through a window into the Nickerson-Ludden apartment. Mr. Walston was agitated. Messrs. Walston and Plourde went down to Mr. Walston's apartment, and, while they were there, Jacyln Goss arrived home and proceeded upstairs to pick up baby Breena. Jacyln reported she had bailed Mr. Walston out, but he was not to return to 183 Church Street.

While Jacyln Goss was picking up Breena, Mr. Walston and Mr. Plourde came back upstairs. Mr. Walston stood outside the Nickerson-Ludden apartment trying to listen to Jacyln's conversation. Mr. Walston then walked into the apartment and loudly demanded to know what Jacyln had done with his gun. Jacyln's face turned white upon seeing Mr. Walston, and she responded that the gun was on the front porch under the chair cushion. At this point, Mr. Walston went downstairs to his apartment. Jacyln took Breena and followed Mr. Walston. Mr. Nickerson, Ms. Ludden, and their son, fearing for their safety, left their apartment. At some point between 2:30 and 3:00 a.m., Mr. Walston was observed entering the Nickerson-Ludden apartment. Belinda Gosselin contacted Carie Ludden, who was now at the home of Christopher

Gosselin. Ms. Ludden called the police at approximately 3:25 a.m. on December 15, 2002 and informed the police that Mr. Walston was back at 183 Church Street.

Officer Wintle and Corporal Grinnell went to 183 Church Street. Mr. Walston did not respond when the officers knocked on the doors to his apartment. Officer Wintle called Mr. Walston's apartment, and Officer Wintle heard the following message on the answering machine: "This is Raven obviously you're not getting me, so you know what to do, so just do it." Officer Wintle understood Raven was Mr. Walston's nickname. Officer Wintle went to the back door of the Nickerson-Ludden apartment and heard sounds of walking inside. Officer Wintle also heard what sounded like the racking of a pistol. Concerned for his safety, particularly in light of the earlier comments Mr. Walston had made about the Hardesty case, Officer Wintle backed off and went upstairs to evacuate the remaining tenants.

The State Tactical Team was called in. The Tactical Team attempted to make telephone contact with Mr. Walston, but the telephone rang twenty times and no answering machine picked up. After repeated attempts to telephone her, Jacyln finally picked up the phone. The Tactical Team had Jacyln exit the apartment with Breena. Moments after Jacyln left the building, Mr. Walston jumped through a window in the garage area and ran out the back of the house. He was arrested without further incident. With the consent of Jacyln, the police searched the Walston-Goss apartment. Among the items seized was a .22 caliber semi-automatic pistol clip loaded with six bullets.

### 2. Count IV: September 24, 2004 Possession of a .22 Caliber Rohm Revolver

On September 24, 2002, Arthur Roy, Chief of the Dexter Police Department, arrested Mr. Walston on an outstanding warrant for a failure to appear for arraignment from the Newport District Court. Incident to the arrest, Chief Roy conducted a search of Mr. Walston's vehicle and

discovered a .22 caliber Rohm revolver. Mr. Walston was working outside Dexter as a flagger on a paving crew and was standing next to his vehicle. Mr. Walston stated the vehicle was his wife's, but denied he had driven it to work. Instead, he claimed his brother had driven him to work. The Chief asked where Mr. Walston's brother was, and Mr. Walston replied his brother also worked for the paving crew and had walked into town.

### III. DISCUSSION

#### A. Evidence Relating to Mr. Walston's Past Conviction

It is unclear whether this issue remains alive. In his Motion in Limine, Mr. Walston requested an order excluding "any and all information regarding the underlying facts of [his] prior criminal conviction" and limiting the evidence to "the mere fact of conviction." Def.'s Mot. in Limine at 1. In its response, the Government offered to stipulate that Mr. Walston "was convicted in 1996 of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 922(g)(9)." Government's Resp. to Def.'s Mot. in Limine (Docket # 62) at 8. The Government further stated that, if Mr. Walston would agree to this proposed stipulation, it would not seek to admit any further evidence regarding his underlying assault conviction. *Id.* Mr. Walston has not responded further to the Government's response, and it is unclear whether the Government's offer satisfies Mr. Walston's concern.

It should. When a defendant charged as a felon in possession offers to stipulate to the existence of an earlier felony conviction, the government ordinarily cannot adduce proof of the nature, as opposed to the fact, of that conviction for the purpose of establishing the status element of the offense. *Old Chief,* 519 U.S. at 190-91; *United States v. Joost,* 133 F.3d 125, 128 (1st Cir. 1998), *cert. denied*, 523 U.S. 1087 (1998); *United States v. Tavares,* 21 F.3d 1, 4-5 (1st Cir. 1994), *cert. denied*, 519 U.S. 955 (1996). If Mr. Walston refuses the Government's offer to

stipulate, the Government will be put to its proof on all elements of the crimes charged, including the fact of the earlier conviction. Count I is premised on the allegation that Mr. Walston made a false statement on form 4473 when he denied he had ever been convicted in any court of a misdemeanor crime of domestic violence. *See* 18 U.S.C. § 922(a)(6)("It shall be unlawful . . . for any person in connection with the . . . attempted acquisition of any firearm . . . to make any false or fictitious oral or written statement . . . intended or likely to deceive . . . [the] dealer . . . with respect to any fact material to the lawfulness of the sale . . . of such firearm . . . ."). Counts II, III, and IV are premised on the allegation that Mr. Walston possessed a firearm after having been convicted of misdemeanor crime of domestic violence. *See id*. § 922(g)(9)("It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to . . . possess . . . any firearm . . . ."). His prior conviction would, therefore, be properly admissible through standard methods of proof, absent a stipulation consistent with *Old Chief*. On the assumption the Government's stipulation meets Mr. Walston's concern, this Court GRANTS the Defendant's motion to exclude evidence of the facts underlying the 1996 conviction of a misdemeanor crime of domestic violence.[1]

### B. Evidence Relating to Mr. Walston's Possession of the Firearms:  Counts II, III, and IV

Mr. Walston objects to the admission of the facts surrounding his alleged possessions in Counts II, III, and IV on the ground that they would improperly serve to create the impression he is dangerous and guilty of the crimes charged. Although not cited, Mr. Walston's argument implicitly invokes Federal Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

---

[1] If this assumption is incorrect, the parties are free to return to the Court and clarify what issues remain unresolved.

> plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) absolutely bars "other acts" evidence relevant only to prove criminal propensity or bad character. *United States v. Tuesta-Toro,* 29 F.3d 771, 775 (1st Cir. 1994), *cert. denied*, 513 U.S. 1132 (1995). "Its absolute bar is implicated, however, only if the challenged 'other crimes, wrongs, or acts' are relevant *exclusively* to instigate an inference that the defendant is more likely to have acted in similar fashion by committing the offense for which he is on trial." *United States v. Tutiven*, 40 F.3d 1, 5 (1st Cir. 1994), *cert. denied*, 514 U.S. 1031 (1995). By its terms, "Rule 404(b) interposes no *absolute bar* to circumstantial evidence *intrinsic* to the crime for which the defendant is on trial, but only to evidence of '*other* crimes, wrongs, or acts' whose probative value *exclusively* depends upon a forbidden inference of criminal propensity." *Id*.

The absolute bar to admission under Rule 404(b) is not implicated in this case, because the evidence is intrinsic to the crimes charged and provides the context under which the Government alleges the crimes occurred. The Government is offering the evidence to demonstrate that Mr. Walston knowingly possessed the firearms during the periods charged. The evidence is also probative of Mr. Walston's motive, intent, knowledge, and lack of mistake.

Again, although not expressly cited, Mr. Walston is also apparently relying on Federal Rule of Evidence 403, arguing the evidence would be "unfairly prejudicial." This Court disagrees. The probative value of the proffered evidence substantially exceeds any unfair prejudice to Mr. Walston.[2]

---

[2] To minimize any confusion or prejudice, upon request of Mr. Walston, this Court will consider giving a limiting instruction to clarify that the evidence is not to be considered to demonstrate Mr. Walston's character or his propensities.

### C. Evidence Relating to the Outstanding Warrant for Mr. Walston's Arrest: Count IV

Regarding the Government's evidence as to why the Dexter Police Chief stopped Mr. Walston and searched his vehicle, this Court agrees that evidence there was an outstanding arrest warrant for failure to appear on another charge for arraignment in Maine District Court in Newport is potentially problematic. This Court is concerned this evidence, when combined with admissible evidence of Mr. Walston's prior domestic violence conviction, would implicate both Rules 404(b) and 403.

On the other hand, there is much force in the Government's argument that, absent evidence of the reason for the stop and the search, the jury will be given an incomplete picture. It would be left to speculate why a police officer would stop and question an apparently innocent man simply standing next to his motor vehicle at work and then proceed to search his vehicle. This evidence could also explain Mr. Walston's motivation in keeping a weapon in his glove compartment.

It is true the Government has agreed not to seek to admit the reason for the outstanding arrest warrant and only to admit the fact there was a warrant. The Government's concession, however, may work a cure worse than the disease. The jury would be left to speculate what exactly it was Mr. Walston did to subject himself to an arrest warrant. Along the broad spectrum of reasons for the issuance of an arrest warrant, failure to appear for arraignment, while not trivial, falls among the more benign.

Finally, the admissibility of the evidence may depend upon Mr. Walston's response at trial. For example, if Mr. Walston attacks the stop and search, the Government would have the right to submit evidence of the outstanding arrest warrant to justify its actions. If he does not do so, evidence of the outstanding warrant becomes less probative. Similarly, if Mr. Walston puts

the Government to its proof on the issue of possession, the outstanding warrant may give Mr. Walston a reason for possession. These are matters this Court cannot assess at this point.

Having expressed its concerns, this Court will defer ruling. The parties may be able by voluntary stipulation to obviate this issue. If they are unable to do so, counsel are directed to inform this Court no later than two weeks before commencement of trial.

## IV. CONCLUSION

This Court GRANTS the Defendant's motion to exclude evidence underlying his prior conviction based on the assumption that the parties will stipulate to the prior conviction, DENIES the Defendant's motion to exclude evidence relating to his possession of the firearms on Counts II, III, and IV, and DEFERS RULING on the Defendant's motion to exclude evidence of the outstanding arrest warrant in Count IV.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of June, 2005